**VILLAGE OF MANTUA, Appellee,**

**v.**

**MARSILLO, Appellant.**

[Cite as *Mantua v. Marsillo* (1996), 110 Ohio App.3d 227.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 95–P–0110.

Decided April 1, 1996.

*Donald H. Martell,* Mantua Village Solicitor, for appellee.

*O'Neil & Pierson* and *Augustin F. O'Neil,* for appellant.

FORD, Presiding Judge.

This is an appeal from a Portage County Municipal Court, Ravenna Division, decision which overruled appellant Jack A. Marsillo's motion to dismiss, which was followed by a conviction for speeding in violation of Mantua Village Ordinance 333.03.

On April 3, 1995, appellant was stopped by Officer Roger Forman of the village of Mantua Police Department. Appellant was driving on Route 44, which is known as Main Street in Mantua. Appellant was clocked going forty-five m.p.h. in a business district which had a speed limit of twenty-five m.p.h. posted along the roadway.

On May 23, 1995, appellant filed a motion to dismiss the charge, claiming that the business district designation that reduced the posted speed limit from forty-five to twenty-five m.p.h. was inappropriate. A hearing on the motion was heard on July 5, 1995, which was held simultaneously with the trial on the speeding charge pursuant to stipulation of the parties. On July 17, 1995, a judgment entry was filed by the trial court which overruled appellant's motion to dismiss and found appellant guilty of speeding. Appellant was sentenced to pay a $25 fine plus court costs, which was stayed pending the disposition of this appeal.

Appellant now appeals raising the following as error:

"1. The trial court erred to the prejudice of [appellant] by including structures devoted to industry in the calculation and determination of a business district, as defined by [R.C.] 4511.01(NN).

"2. The trial court erred in its designation of Mats Road as the street/highway used to calculate and determine one of the boundaries of the business district.

"3.   The trial court erred in holding that a business district speed zone does not require business buildings on each side of the street or highway for fifty percent or more of the frontage."

In appellant's first assignment, he claims that the trial court abused its discretion when it included industrial concerns in the calculation of the total frontage dedicated to business purposes.   The calculation of business frontage is the determining factor of whether a reduced speed limit is warranted because of a proliferation of business pursuits.   R.C. 4511.01(NN) defines a business district:

" 'Business district' means the territory fronting upon a street or highway, including the street or highway, between successive intersections within municipal corporations where fifty per cent or more of the frontage between such successive intersections is occupied by buildings in use for business * * *."

Appellant contrasts this definition with R.C. 4511.01(PP), which provides the definition of an urban district:

" 'Urban district' means the territory contiguous to and including any street or highway which is built up with structures devoted to business, industry, or dwelling houses situated at intervals of less than one hundred feet for a distance of a quarter of a mile or more * * *."

Appellant attaches great significance to the absence of the term "industry" in the definition of "business district" and concludes that this compels the result that industries are not included in the broader definition of "businesses."   We disagree.   R.C. 1.42 states:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage.   Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

In this case, the definition of "business district" includes the requirement that more than fifty percent of the frontage be "in use for business."   Webster's Third New International Dictionary (1986) 302, provides a definition of "business" as "a commercial or industrial enterprise."   Appellant's contention that because the word "industry" is not included in the definition of "business," it is excluded as a business is contrary to the standard and accepted definition of business. This standard definition which is adopted through the application of R.C. 1.42 expressly includes industrial concerns as businesses.   "Industry" is simply a more specific form of a "business," not a mutually exclusive term, which is simply demonstrated by the common definition of business.   Appellant's first assignment is overruled.

Appellant's second assignment concerns alleged error in the trial court's use of Mats Road, which is an unpaved road that leads to the rear of the frontage property along Route 44 to property located behind the frontage lots, as an intersection in determining that the area appellant was cited for speeding in was a business district.

Appellant first contends that because the road dead ends after only fifty yards it is not a "thoroughfare" as defined by R.C. 4511.01(BB) and does not, therefore, form an "intersection" as defined by R.C. 4511.01(KK). This contention is without merit.

An investigator retained by appellant testified that the total frontage between Mats Road and Orchard Street is two thousand thirty-four feet. In addition, the total business frontage between Mats Road and Orchard Street was measured by appellant's witness as one thousand thirty-four feet. This, by any calculation, is more than fifty percent of the total frontage. Appellant now contends that because Mats Road is insufficient to form an intersection under the code, it cannot be used as a valid point upon which to base the calculations on whether the area is a business district. In support of this contention, appellant's witness, who had no education or training in the area of traffic engineering, stated what his measurements of the area were and also described a conversation with a postal employee who informed him that there were presently no mailing addresses on Mats Road and that any mail so addressed would be returned "no such address." Certainly, this witness, having never been established as an expert, upon competent objection would not be qualified to testify as to his opinion of whether Mats Road qualified as an intersection for the purposes of determination of the boundaries of a business district.

The prosecution in response placed Richard Overmeyer on the stand. Overmeyer was stipulated by appellant as an expert witness in the area of traffic engineering. He further testified that Mats Road was a legally dedicated roadway which in his *expert* opinion could form an intersection under the Revised Code. An exhibit showing the area was prepared by him, and it demonstrated the exact frontage of the area. Overmeyer also testified:

"[Question] After you completed this study [of this area], were there any areas between successive intersections along the 25 MPH zone that did not qualify for the business district definition?

"[Answer] No * * *.

"[Question] [A]re there any of those regions, areas, between intersecting streets that resulted in less than 50% of usage that was a business district usage?

"[Answer] No, sir.

"[Question]   They were all above 50% or more, right?

"[Answer]   Yes, sir.

"[Question]   And specifically the region between Orchard Street and Mats Road.  Was it above 50%?

"[Answer]   Yes, sir.

" * * *

"[Question]   O.K., and do you have an opinion as to whether or not the posted speed, 25 MPH in that area is correct and in line with the definition of business district as it appears in [R.C.] 4511.01(NN) * * *?

"[Answer] . In my opinion, the 25 MPH speed limit is appropriate for this whole area."

Therefore, Overmeyer testified that Mats Road qualified as an intersection in the determination that this portion of Route 44 was a business district.  Appellant presented no qualified expert to refute this assertion, or to establish as factual any of the assertions made by him.  We note that Overmeyer also stated in the foregoing testimony that none of the areas between streets in the entirety of this business district contained less than the required fifty percent business frontage to qualify as a business district.

Appellant also asserts that because there was no break in the solid yellow line on Route 44 to show the presence of an intersection or traffic control devices, as a matter of law, it does not qualify as an intersection.  During the cross-examination of the prosecution's expert witness, the following colloquy took place:

"[Question]   An intersection would require, as far as you know, a cut in the yellow line, double yellow line?

"[Answer]   No.

"[Question]   It doesn't?

"[Answer]   No."

Again, appellant put forth no qualified expert testimony to the contrary, and has presented no authority to support his contention that a break in painted lines is required for a roadway to be used as a reference point in calculations such as these.  Given the fact that the prosecution produced expert testimony that concluded that Mats Road did, in fact, form an intersection that may be used in the designation of a business district, and appellant's complete failure to provide any expert testimony or authority to the contrary, we cannot say that the trial court erred when it considered Mats Road as forming an intersection when calculating the boundary of this business district.  We also note that even if the use of this road was error, appellant presented no evidence that established with

any degree of particularity that the area from Orchard Street to the next road which he believes would have been proper contained less than fifty percent business frontage. In fact, as previously noted, the prosecution's expert testified that the entirety of the posted business district had the minimum fifty percent business frontage to qualify it as a business district. Appellant's second assignment is overruled.

In his third assignment, appellant contends that the trial court erred when it did not apply the ruling from this court in *Kirtland Hills v. McGrath* (1993), 89 Ohio App.3d 282, 624 N.E.2d 255, in which we required structures be present on both sides of the street in urban districts in order to qualify for the reduced speed limit.

In *McGrath*, we applied the explicit language of R.C. 4511.01(PP), which states that an urban district must be "built up with structures * * * situated at intervals of less than one hundred feet for a distance of a quarter of a mile or more." *Id.* at 285, 624 N.E.2d at 257. However, unlike the case in *McGrath*, the definition of "business district" only requires that "fifty per cent or more of the frontage between such successive intersections [be] occupied by buildings in use for business." R.C. 4511.01(NN). This definition does not require a continuous string of structures, and instead calls for a calculation of the percentage of frontage that is devoted to business pursuits in a given area. The holding in *McGrath* is inapplicable for that reason.

Because it was demonstrated at trial that greater than fifty percent of the frontage on this stretch of Route 44 was being used for business pursuits, the trial court did not err when it determined that appellant was stopped in a business district. Appellant's third assignment is overruled.

For the foregoing reasons, appellant's assignments of error are without merit and are overruled. The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and NADER, JJ., concur.